SALIL BALI, State Bar No. 263001
sbali@stradlinglaw.com
SEAN THOMAS LOBB, State Bar No. 324213
stlobb@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Fax: (949) 725-4100

Attorneys for Plaintiff
Quandis, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Quandis, Inc., a Delaware corporation,

Plaintiff,

v.

OrangeGrid, Inc., a Delaware corporation; Dustin Sauter, an individual; and Does 1 through 10, inclusive,

Defendants.

Case No. 8:25-cv-02532

**COMPLAINT FOR:**

**1. WILLFUL COPYRIGHT INFRINGEMENT**

**2. VICARIOUS COPYRIGHT INFRINGEMENT**

**3. UNFAIR COMPETITION UNDER 15 U.S.C. §1125(A)**

**4. BREACH OF CONTRACT**

**5. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**JURY TRIAL DEMANDED**

Plaintiff Quandis, Inc. ("Plaintiff" or "Quandis"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action to enjoin, *inter alia*, Defendant OrangeGrid Inc.'s ("Defendant" or "OrangeGrid") and Defendant Dustin Sauter's ("Sauter") unlawful copyright infringement and to remedy OrangeGrid's breaches of contract. Under the claims for relief pled, Quandis seeks preliminary and permanent injunctive relief, and damages arising from OrangeGrid's and Sauter's (collectively, "Defendants") unlawful conversion and use of its proprietary source code (the "Source Code") and confidential information.

2. Quandis is a company based in Orange County, California that—after developing the Source Code for over a decade—agreed to license its valuable Source Code for a software platform to OrangeGrid, a software company, for $2 million under an agreed upon payment schedule. Sauter is the CEO, Chief Information Officer, and Co-founder of OrangeGrid. Rather than pay for the Source Code in full, Defendants engaged in a prolonged series of delayed payments, and eventually halted payments all together. Now, Quandis is owed hundreds of thousands of dollars in payments from OrangeGrid, and Defendants have refused to return and refrain from continuing to use the licensed Source Code. Instead, Defendants are deliberately ignoring Quandis and willfully infringing upon Quandis' copyright protected Source Code.

3. As a direct result of Defendants' conduct, Quandis has suffered extensive damages and continues to suffer irreparable and continuing harm.

## THE PARTIES

4. Plaintiff Quandis is a corporation duly organized and existing under the laws of Delaware with its principal place of business located at 30021 Tomas, Rancho Santa Margarita, CA 92688.

5. On information and belief, Defendant OrangeGrid is a corporation duly organized and existing under the laws of Delaware with its registered

address located at 145 S. State College Blvd., Brea, CA 92821. OrangeGrid is a competitor of Quandis, and describes itself as a software company that builds technology to automate business process requirements.

6. On information and belief, Sauter is a citizen of California who resides in Torrance, California. He co-founded OrangeGrid in 2015, and he has served as the Chief Information Officer and Chief Operating Officer of OrangeGrid since then. In April 2025, he became the CEO of OrangeGrid. Plaintiffs are informed and believe that defendant Sauter has authorized, directed, and/or actively participated in the wrongful conduct alleged herein.

7. Quandis is ignorant to the true names and capacities of the Defendants sued as Does 1–20, inclusive, and therefore, Plaintiff has sued them by their fictitious names.

**JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction over this action under the Copyright Act (17 U.S.C. §301) pursuant to 28 U.S.C. § 1331 because this is a civil action for copyright infringement in violation of the Copyright Act of 1976 (17 U.S.C. §501, *et. seq.*) and for unfair competition under the laws of the United States (15 U.S.C. §1125(a), *et seq.*).

9. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over any state law claims, such as for breach of contract, as they arise from a common nucleus of operative fact with the federal causes of action.

10. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this district under 28 U.S.C. § 1332(b)(2). Additionally, OrangeGrid's principal place of business is located in this district, and Sauter resides in this district.

11. Jurisdiction in this Court is also appropriate pursuant to the Source Code License Agreement (the "Agreement"), which was signed by Quandis and

OrangeGrid on January 28, 2015. A true and correct copy of the Agreement is attached here as **Exhibit A**.

12. In the Agreement, the parties agreed that any "disputes arising in connection with this Agreement and further agreements relating hereto shall be settled by any competent court in Orange County, California." (Ex. A § 14.1.)

## GENERAL ALLEGATIONS

### Quandis

13. Founded in 2003, Quandis specializes in delivering innovative software solutions tailored to the evolving needs of the financial services industry.

14. Quandis' suite of products, built on its flagship Quandis Business Objects ("QBO") platform, offers flexibility, efficiency, and compliance to meet the dynamic challenges of its clients, which include financial services companies, outsource service providers, and law firms.

15. From comprehensive applications to turnkey data services, Quandis empowers organizations to streamline operations and stay ahead in a competitive landscape.

16. The unique QBO platform, in particular, helps organizations simplify processes, enhance operational efficiency, and maintain compliance with regulatory demands.

17. The QBO platform provides organizations centralized data storage, real-time data access, and data integrity and security. It also allows for automated task assignment, task prioritization and scheduling, end-to-end workflow automation, cross-department coordination, and custom reporting.

### Quandis' Original Works of Authorship

18. Quandis developed the Source Code for its QBO platform over a decade, investing countless man-hours into the development and well over $10 million.

19. Quandis also developed a series of manuals and user guides for its QBO platform.

20. All original works of authorship, including, without limitation, source code, manuals, and user guides relating to Quandis' products were created by the company or under the Agreement, which assigns Quandis all relevant rights.

21. Quandis is the owner of all rights to and in the Copyright Registration No. TX 9-527-917, titled "Quandis Business Objects Platform v3.0," with a Date of First Publication of March 1, 2013.

22. A true and correct copy of the Certificate of Registration from the U.S. Copyright Office is attached here as **Exhibit B**.

**The Agreement Between Quandis and OrangeGrid**

23. On January 28, 2015, Quandis and OrangeGrid signed the agreement. (Ex. A. at 1.) Under the Agreement, OrangeGrid licensed the QBO software from Quandis. In return, OrangeGrid agreed to pay Quandis $2 million over a six-year period according to the following schedule:

Initial Payment - $150,000.00
One Year anniversary of the Effective Date - $200,000.00
Two Year anniversary of the Effective Date - $250,000.00
Three Year anniversary of the Effective Date - $300,000.00
Four Year anniversary of the Effective Date - $350,000.00
Five Year anniversary of the Effective Date - $400,000.00
Six Year anniversary of the Effective Date - $350,000.00

(*Id.* §§ 2.1, 5.1.)

24. Under the Agreement, Quandis granted OrangeGrid a license to "make, have made, sell, have sold, import, copy, distribute, display, perform, modify, use, and create derivative works of" the QBO software. (*Id.* § 2.1.) However, the Agreement specified that:

> Quandis shall retain ownership of all right, title and interest in and to the Software developed by Quandis. This Agreement will not grant OrangeGrid ownership of any patents, trademarks, trade secrets, copyrights or other intellectual property rights in the Software.

(*Id.* § 2.5.)

25. The duration term of the Agreement was "perpetual, commencing on the Effective Data, unless sooner terminated in accordance with the terms of this Agreement." (*Id.* § 6.1.) Under the Agreement, if either party breached "any of its material obligations hereunder, and such breach is not cured within ninety (90) calendar days after notice from the other party," then the "nonbreaching party shall be entitled to terminate this Agreement upon written notice." (*Id.* § 6.2.)

26. The Agreement also protected "Confidential Information," which was defined as "information exchanged between Quandis and OrangeGrid pursuant to this Agreement and in connection with the performance of the parties' obligations hereunder, orally or in writing, if marked to indicate its confidential nature or if and of a type that a reasonable person would expect to be proprietary and confidential, including the terms of this Agreement." (*Id.* § 13.1.) The Agreement specified that neither "party shall use the Confidential Information of the other except as permitted or expressly provided under this Agreement," and that the Confidential Information Section "shall survive the expiration or termination of this Agreement." (*Id.* §§ 6.3, 13.2.)

**<u>OrangeGrid's Access To Quandis' Source Code Under The Agreement</u>**

27. Under the Agreement, OrangeGrid gained access to the Source Code in January of 2015.

28. OrangeGrid made its initial payment of $150,000 to Quandis for the Source Code but then became delinquent on its payment schedule under the Agreement.

29. Consequently, Quandis agreed to amend the Agreement to alter the

payment schedule for OrangeGrid, such that OrangeGrid agreed to start paying off the $2 million total owed at the rate of $20,000 per month.

**Defendants' Wrongful Acts**

30. The last payment made to Quandis by OrangeGrid was made on January 31, 2024. By February 1, 2024, OrangeGrid still owed Quandis $640,000 under the terms of the Agreement.

31. From February 1, 2024 to March 31, 2025, Quandis maintained regular contact with Defendants in an attempt to obtain the amount due under the Agreement. But OrangeGrid failed to pay its amount due.

32. After over a year, on March 31, 2025, Quandis sent Defendants a formal notice of "Breach of License Agreement for Non-Payment" (the "Notice"). The Notice specified that: "Pursuant to Section 6.2 of the Agreement OrangeGrid is in material breach of the Agreement and has ninety (90) days following receipt of this letter to make all outstanding payments then owed to Quandis or Quandis shall terminate the Agreement and seek all available remedies at law and in equity to enforce its rights under the Agreement." A true and correct copy of the Notice is attached here as **Exhibit C**.

33. Defendants ignored the Notice and never responded to Quandis—despite the fact that Quandis sent the Notice in the same manner as all prior communications, that were responded to by OrangeGrid.

34. Accordingly, over 90 days later, on June 30, 2025, Quandis sent Defendants a "Termination of License Agreement Due to Uncured Breach" letter (the "Termination Letter"). The Termination Letter provided formal notice that Quandis was terminating the Agreement in accordance with Section 6.2 of the Agreement. The Termination Letter stated that Defendants were obligated to:

(1) Immediately cease all use of the licensed source code and documentation.

    (2) Permanently delete or return all copies (including backups) of the licensed material in its possession or control.

(3) Submit a written certification of compliance signed by an authorized officer of the company no later than July 14th, 2025, 10 business days from notice.

(4) Continue to uphold its obligations with respect to confidentiality, intellectual property protections, and any surviving provisions in accordance with Sections 6 and 11-14 of the Agreement.

35. A true and correct copy of the Termination Letter is attached here as **Exhibit D**.

36. Again, Defendants ignored the Termination Letter and never responded to Quandis—despite the fact that Quandis sent the Letter in the same manner as prior communications that were responded to by Defendants.

37. Plaintiffs are informed and believe that, at the direction of Sauter, Defendants failed to confirm deletion or a return of all copies of the Source Code and never submitted written certification of compliance. Defendants have also refused to refrain from continuing to use the licensed Source Code.

38. Plaintiffs are informed and believe that, at the direction of Sauter, Defendants have placed Quandis' Source Code into an escrow account. The escrow account is set up such that if OrangeGrid were to go out of business or sell off its assets, then some of OrangeGrid's current clients could take the Source Code out of escrow and wrongfully use or assert ownership over the Source Code.

39. On information and belief, OrangeGrid is currently in the process of winding down. Consequently, a substantial, impending risk exists that Defendants, at the direction of Sauter, will attempt to transfer the Source Code to a third-party without Quandis' consent and in violation of the Section 14.3 of the

Agreement. Quandis reserves the right to add to this action as Defendants any third parties who attempt to wrongfully assert ownership over the Source Code via a transfer or assignment of rights from OrangeGrid.

40. On information and belief, at the direction of Sauter, Defendants are still using the Source Code to create their infringing platform, which is competing with Quandis' QBO platform. Defendants knew or should have known that using the Source Code to copy or reproduce without authorization was a violation of Quandis' copyright in the Source Code and a violation of the Agreement.

41. For instance, a screenshot from Google Chrome of OrangeGrid's login page of its website for its online platform demonstrates that Defendants are still using Quandis' Source Code because the login endpoint is unique to Quandis' QBO software. As shown in the screenshot below, the "ashx" endpoint (highlighted below) is unique to QBO, and Defendants are still using it.

```
Elements  Console  Sources  Network  Memory  Application  Performance  Recorder  Privacy and security  >>

   <script>…</script>
  <div class="login c-login">
    <div class="content"> == $0
      <div class="login-logo">…</div>
      <div class="c-login__message logged-out hidden">…</div>
      <div class="login-form">
        <form id="LoginForm" role="form" method="post" action="/Security/Login.ashx/
          <input type="hidden" name="IsAdminLogin" value="0">
          <fieldset>
            <div class="form-group">…</div>
            <div class="form-group">
              <input class="form-control" placeholder="Password" name="Password" type
            </div>
            <div id="waitspinner" style="text-align:center; color:orange; display:nor
            <div id="response-message" class="c-login__alert alert alert-danger u-hid
            <!-- Change this to a button or input when using this as a form -->
            <button id="login" type="submit" class="c-btn c-btn--contrast c-btn--bloc
          </fieldset>
        </form>
        <p>…</p>
        <div id="ForgotPasswordModal" class="modal fade" role="dialog">…</div>
        <div class="c-login__copy">…</div>
      </div>
    </div>
  </div>
  <script src="/Component/Chartjs/Chart.js"></script>
  <script src="/bundles/jquery?v=KiPPM8YzsiYzCIQ9WahAh2PtZy5flWR7-MGCgjq2z781"></scr
  <script src="/bundles/theme?v=52eFDOvKF5AdggqPVmIQ_mpdYa6w-xOY2GMDCANLHfg1"></scri

Computed  Styles  Layout  Event Listeners  >>
Filter  :hov .cls

element.style {
}
* {                                         ogfrontend?…rBlCf441:10
  -webkit-box-sizing: border-box;
  -moz-box-sizing: border-box;
  box-sizing: border-box;
}
div {                                       user agent stylesheet
  display: block;
  unicode-bidi: isolate;
}
Inherited from div.login.c-login
.c-login {                                  ogfrontend?…rBlCf441:23
  background: #f27324;
  background-image: url(
    /Content/Images/backgrounds/signin-bg… );
  position: absolute;
  top: 0;
  left: 0;
  height: 100%;
  width: 100%;
  background-repeat: no-repeat;
  background-size: cover;
  background-position: 0 -110px;
  color: #fff;
}
Inherited from body.o-auth-bg.login-body
body {                                      ogfrontend?…rBlCf441:23
  font-family: "Roboto", sans-serif;
```

42. The use of the same end point is just the "tip of the iceberg" with respect to the extent that Defendants are infringing Quandis' Source Code.

43. Moreover, on information and belief, the below chart details additional publicly available exemplars of Defendants' ongoing use and infringement the Source Code, based on a comparison between the functionality of both companies' platforms.

| Core Capability | Quandis (QBO) | OrangeGrid | Similar Functionality Advertised? |
|---|---|---|---|
| **Workflow** | Rich workflow engine; steps can add tasks, generate docs, send messages, calculate scores, open processes, branch/parallel flows, invoke APIs, call AI services. | "Single workflow engine" managing mortgage servicing workflows; supports branching, workflow templates, and event triggers. | ✅ Yes — both advertise workflow orchestration with automation logic. |
| **Tasks / Work Management** | Auto-create worklists for forms; load-balanced assignment by matrix; throughput management; audit work lists. | Automated task assignment by role/team; task queues tied to foreclosure, bankruptcy, loss mit tracks; reassignments supported. | ✅ Yes — similar task and work queue management. |
| **Integration** | Prebuilt/custom plugins; API calls; external system integrations (accounting, telephony, geocoding, | Low-code/no-code integrations; 50+ connectors; vendor ecosystem (GridSource); API-enabled. | ✅ Yes — both emphasize system connectivity; OG emphasizes vendor ecosystem. |
| **Rules Engine** | QBO Matrix rules engine with visual definition, conditional logic, multi-dimensional matrices, event-driven processing, real-time execution. | Workflow templates include embedded rules; conditions drive tasking & escalations. | ✅ Yes — both offer business rules, but QBO markets a standalone rules engine. |
| **Work Queues / Load Balancing** | Automated assignment by matrix; throughput mgmt; dedicated audit queues. | Task queues in default tracks; visibility & reassignment supported. | ✅ Yes — conceptually aligned, though QBO stresses flexible assignment. |
| **AI / Automation** | Generative AI for queries, text classification, sentiment, extraction, UI design, web search/import. | Workflows can call external AI tools for productivity/customer experience. | ✅ Yes — both advertise AI enablement, QBO markets broader GenAI features. |
| **Document Handling** | Document classification, templates, FTP monitoring, mail merge, USPS certified mail, S3/Azure storage. | Document mgmt within foreclosure/bankruptcy/loss mit workflows; upload/storage, vendor sharing. | ✅ Yes — both handle docs; QBO emphasizes templates & automation. |
| **Messaging** | Notes, email, templates, secure delivery, tracking. | Workflow-driven notifications, task alerts, vendor/borrower communications. | ✅ Yes — both include messaging features. |

44. On September 19, 2025, Quandis filed an arbitration demand with the American Arbitration Association ("AAA") against OrangeGrid regarding this dispute with OrangeGrid.

45. On October 1, 2025, Sauter, emailed AAA and Quandis, stating that OrangeGrid refused to participate in the arbitration. Consequently, this Complaint follows.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**(Willful Copyright Infringement)**

**(Against OrangeGrid And Dustin Sauter)**

46. Plaintiff adopts and reasserts the allegations above as if fully set forth here.

47. Quandis is the rightful owner of the copyright to the Source Code. Attached as Exhibit B is the copyright application for the Source Code that has been filed with the United States Copyright Office.

48. Defendants had access to the Source Code only subject to the Agreement. Defendants have no independent rights in the Source Code pursuant to the Agreement.

49. Quandis never authorized Defendants to use or copy the Source Code, outside of the limited scope of Sections 2.1 and 2.5 the Agreement.

50. By virtue of the facts alleged above, Defendants have acted willfully, by intentionally infringing Quandis' copyrighted Source Code by copying substantial elements and portions of the Source Code. These uses directly infringe Quandis' copyright in the Source Code.

51. Defendants' infringement has caused and will continue to cause Quandis irreparable and continuing harm unless preliminarily and permanently enjoined by this Court.

52. At all relevant times, Sauter, as the CEO, CIO, COO, and Co-

founder of OrangeGrid, was the guiding spirit and central figure behind OrangeGrid's infringement of the Source Code. As such, he is personally liable for his wrongful conduct. Sauter was the moving, active, and conscious force behind OrangeGrid's copyright infringement.

53. Defendants' acts of copyright infringement have also caused harm to Quandis that may be compensable in money damages. Defendants have also been or will be unjustly enriched through direct and indirect profits and benefits as a result of their infringement. Quandis is entitled to statutory damages and/or its actual damages and the disgorgement of OrangeGrid's profits directly and indirectly attributable to Defendants' infringement of Quandis' Source Code in an amount to be established at trial.

54. On information and belief, Defendants' infringement was willful in that they knew or should have known that their conduct would infringe Quandis' copyright. Defendants' willful infringement supports Quandis claim to enhanced damages and attorney fees.

**SECOND CAUSE OF ACTION**

**(Vicarious Copyright Infringement)**

**(Against Dustin Sauter)**

55. Plaintiff realleges and incorporates herein the foregoing paragraphs.

56. Defendant Dustin Sauter is liable for vicarious infringement because he had (1) a direct financial interest in the infringing activity, and (2) the right and ability to supervise the activity that causes the infringement but declined to stop or limit it. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 930 (2005). Intent or knowledge of the infringement is not an element of a claim for vicarious liability. *Id*. at n.9.

57. Sauter had a direct financial interest in the infringing conduct as CEO, CIO, and Co-founder of OrangeGrid. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).

58. As CEO, CIO, and Co-founder of OrangeGrid , Sauter had the right and ability to supervise the activity that causes the infringement but declined to stop or limit it. *Id.*

**THIRD CAUSE OF ACTION**

**(Unfair Competition Under 15 U.S.C. §1125(a))**

**(Against OrangeGrid)**

59. Plaintiff adopts and reasserts the allegations above as if fully set forth here.

60. OrangeGrid's continued use of the Source Code constitutes reverse passing off, a false designation of origin, and a false description or representation, which have caused and are likely to cause confusion, mistake, or deception as to the origin, nature, characteristics and/or qualities of Quandis' goods and services.

61. On information and belief, OrangeGrid has intentionally and falsely designated the origin of its goods and services with the intention of deceiving and misleading the public at large, and of wrongfully capitalizing on Quandis' skill, hard work, and investment.

62. OrangeGrid's activities complained of here have caused and, unless enjoined, will continue to cause substantial and irreparable harm to Quandis, its business reputation, and its goodwill, for which Quandis is without adequate remedy at law. OrangeGrid's activities have and will continue to cause Quandis monetary loss and damages including, but not limited to, the loss of profits in an amount to be proven. OrangeGrid has also been and will continue to be unjustly enriched through direct and indirect profits and benefits as a result of its false designations.

/ / /

/ / /

**FOURTH CAUSE OF ACTION**

**(Breach of Contract)**

**(Against OrangeGrid)**

63. Plaintiff adopts and reasserts the allegations above as if fully set forth here.

64. Quandis and OrangeGrid entered into a written valid, binding, and enforceable contract, the Agreement, pursuant to which: (1) Quandis agreed to grant OrangeGrid a license to the Source Code in the exchange for the purchase price and (2) OrangeGrid agreed the Source Code was the sole and exclusive property of Quandis.

65. Quandis has performed all of its material obligations under the Agreement, except those which it was excused or prevented from performing, due for example to OrangeGrid's breach.

66. OrangeGrid materially breached the Agreement, among other things, by: (1) failing to pay the licensing price in full, (2) disclosing, using, and copying Quandis' confidential information, and (3) by asserting ownership of copies based on Quandis' intellectual property in violation the Agreement.

67. OrangeGrid's material breaches of the Agreement has caused harm to Quandis that is compensable in money damages in an amount to be proven at trial, but not less than $640,000. OrangeGrid has also been and will continue to be unjustly enriched through direct and indirect profits and benefits as a result of its breaches.

**FIFTH CAUSE OF ACTION**

**(Breach of the Covenant of Good Faith and Fair Dealing)**

**(Against OrangeGrid)**

68. Plaintiff adopts and reasserts the allegations above as if fully set forth here.

69. Quandis and OrangeGrid are parties to the Agreement, the terms of

which are described in detail above and incorporated by reference. The Agreement is a written valid, binding, and enforceable contract. The Agreement contains an implied covenant of good faith and fair dealing whereby, among other things, OrangeGrid was required to use good faith in its performance of the agreement.

70. Quandis has performed all of its material obligations under the Agreement, except those which it was excused or prevented from performing due to for example OrangeGrid's breach.

71. OrangeGrid breached the implied covenant of good faith and fair dealing in the agreement by, among other things, frustrating the purpose of the Agreement as described above.

72. OrangeGrid's material breaches of the covenant of good faith and fair dealing have caused harm to Quandis that is compensable in money damages in an amount to be proven at trial. OrangeGrid has also been and will continue to be unjustly enriched through direct and indirect profits and benefits as a result of its breaches.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment in its favor and against Defendants as follows:

A. Judgment that Defendants have willfully committed the act of copyright infringement, that individual Defendant Dustin Sauter is liable for vicarious copyright infringement, and that OrangeGrid has willfully committed the acts of unfair competition, breach of contract, and breach of the covenant of good faith and fair dealing.

B. Issuance of preliminary and permanent injunctions, enjoining and restraining Defendants and their officers, agents, servants, and employees, and all those aiding or abetting or in active concert or participation with them, from further wrongful conduct; from

further use of the Source Code; and from launching a competing product incorporating the Source Code or Plaintiff's confidential information.

C. The immediate return of the Source Code and Plaintiff's confidential information or confirmation of the deletion thereof, the destruction of any copies or reproductions, physical, electronic or digital, and the right to inspect any and all business locations to confirm such return and/or destruction.

D. Statutory damages and actual damages according to proof. In the alternative, Plaintiff seeks rescission of the Agreement, such that, among other things, Plaintiff recaptures any rights that it may have granted to OrangeGrid under the Agreement as well as rights to any derivative works of the Source Code.

E. Enhanced, punitive, and exemplary damages as provided by law.

F. Compensatory damages to be determined at trial.

G. Restitution and/or disgorgement of all gains, benefits, and/or profits that Defendants have derived from their wrongful possession or use of the Source Code.

H. Interest as provided by law.

I. Attorney fees and costs of suit incurred.

J. Such other and further relief as the Court deems just and equitable.

///

///

**JURY DEMAND**

Under Federal Rule of Civil Procedure 38, Plaintiff respectfully demands a trial by jury of all issues triable of right by a jury.

Dated: November 12, 2025

STRADLING YOCCA CARLSON & RAUTH LLP

By: */s/ Salil Bali*
Salil Bali
Sean Thomas Lobb

Attorneys for Plaintiff
Quandis Inc.